JERROLD NADLER, New York
CHAIRMAN

JIM JORDAN, Ohio
RANKING MINORITY MEMBER

# U.S. House of Representatives
## Committee on the Judiciary
Washington, DC 20515-6216
One Hundred Sixteenth Congress

March 19, 2020

The Honorable William P. Barr
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dear Attorney General Barr:

We are writing to follow up on Chairman Nadler's letter of March 12, 2020 asking a series of questions about any measures taken by the Bureau of Prisons (BOP) and the U.S. Marshals Service (USMS) to respond to the COVID-19 pandemic. We write to reiterate the need to receive answers to these questions, as it is critical that we learn how BOP and the USMS are handling the COVID-19 crisis, both in protecting the employees of these agencies and the individuals held in their custody. We expect to hear from you on these matters, in short order.

We write now to underscore several points also made in that letter, as it has become even more evident, given the President's national emergency declaration, that these issues need to be addressed immediately. The BOP currently imprisons 175,000 people in about 100 facilities throughout the country. Data from 2019 indicates that the USMS is responsible for about an additional 75,000 people who are incarcerated pretrial, many in local jail or private contract facilities. Given these numbers, it is incontrovertible that, if the Department of Justice (DOJ) does not act aggressively to address the COVID-19 threat, federal jails and prisons could quickly become epicenters of the COVID-19 pandemic.

With large numbers of people living in close proximity to one another, many of them elderly or living with chronic diseases, DOJ must act now to save lives. Accordingly, we urge you to put in place measures to ensure that both the flow of prisoners into federal facilities is slowed significantly and that prisoners who can and should be released are released forthwith. We cannot wait any longer to take action.

We have learned that, in spite of the recent national emergency declaration and the fact that state and local prosecutorial agencies and courts across the country have made adjustments to their charging policies and are releasing prisoners who are at high risk of getting sick, it appears that it is "business as usual" in many U.S. Attorney's offices. If true, this is deeply distressing. We welcome any information showing that the Department of Justice is issuing guidance to U.S. Attorney's offices and to the BOP and USMS indicating that the Department

takes seriously the threat posed by COVID-19 to the health and welfare of inmates in the U.S. government's care, as well as to the health and welfare of federal correctional employees.

In this regard, we expect that BOP and the USMS are already implementing some baseline public health measures, such as carrying out comprehensive sanitation and cleaning of facilities (including visitation areas), and putting in place other safety measures, such as designating separate bathrooms for individuals with symptoms of COVID-19. We also expect that BOP and the USMS will enact comprehensive testing procedures as soon as tests are made available. We trust that BOP and the USMS are already making available to inmates and corrections officers Centers for Disease Control and Prevention (CDC)-recommended hand sanitizer, adequate soap, and personal protective equipment. We expect that BOP and the USMS are following CDC guidelines for workplaces, including that staff and visitors stay home if they are sick, follow proper coughing, sneezing, and handwashing recommendations, and execute routine environmental cleaning. We also expect that the BOP and facilities under contract with the USMS will follow proper isolation policies and not use extended solitary confinement as a substitute for providing proper medical care. Indeed, BOP and the USMS should work to release all incarcerated people who test positive for COVID-19 to an external healthcare facility to receive care.

During this national emergency, DOJ should be doing all it can to increase social distancing and decrease movement to prevent further proliferation of COVID-19. This means that the Department must limit the number of inmates being brought into the system. Law enforcement agents and line attorneys should be given guidance to desist from making arrests, except where an arrest is the only way to stop a specific and substantial risk that the person will cause bodily injury or use violent force against the person of another. The Department should issue guidance to U.S. Attorney's offices to refrain from pursuing probation, supervised release, and pretrial release revocations as much as possible, and only focus on those which are immediately essential to address. Pending warrants should be recalled, in all but exceptional cases, in favor of summons; arrests on technical supervision violations should be barred. Line lawyers should not be reflexively seeking detention in court, but should give serious consideration to whether the person they seek to detain poses a risk of serious injury to a reasonably identifiable person. They should also take into consideration whether the person is pregnant, whether they are 50 years old or older, and whether they suffer from chronic illnesses such as asthma, cancer, heart disease, lung disease, diabetes, HIV, or other diseases that make them vulnerable to COVID-19 infection.

DOJ and BOP must also do all they can to release as many people as possible who are currently behind bars and at risk of getting sick. Pursuant to 18 U.S.C. 3582(c)(1)(A), the Director of the Bureau of Prisons may move the court to reduce an inmate's term of imprisonment for "extraordinary and compelling reasons." We urge you to use this existing authority and consider moving courts to release federal inmates who are vulnerable to COVID-19 (for instance, persons who are pregnant, who are 50 years old and older, and who suffer from chronic illnesses like asthma, cancer, heart disease, lung disease, diabetes, HIV, or other diseases that make them vulnerable to COVID-19 infection). In addition, the BOP should immediately

reassess, under 18 U.S.C. 3621(b), every person with 36 months or less remaining on their sentence to determine if they can serve the last year of their sentence in community corrections and home confinement, rather than in a correctional institution.  DOJ should use all available powers and authorities, including executive clemency, commutation, furlough, compassionate release, and parole, to reduce the number of federal prisoners in jails, prisons, and other community-release-based programs housing large numbers of people.  Where possible, DOJ should create new emergency mechanisms to reduce imprisoned and incarcerated populations.

Finally, DOJ must make every effort to provide for transparency and communication.  We urge you to release information about the number of COVID-19 cases that exist in BOP and USMS contract facilities, that you provide prompt and accurate information about any fatalities from COVID-19, and that BOP and the USMS provide regular, timely, and up-to-date information to attorneys and families of those in custody who are ill with COVID-19.  Moreover, DOJ must ensure that inmates are able to communicate with their loved ones and with their attorneys during these difficult times.  One way to ensure this, in addition to maintaining family visitation wherever possible, would be to provide free telephone, video, and e-mail communication, as well as full access to postal services, particularly in places where in-person visits are curtailed or restricted because of COVID-19.  At all times, DOJ must also guarantee that the attorney-client privilege is preserved and respected and that attorneys are able to maintain in-person visits with their clients wherever possible, as well as confidential telephone calls and video teleconferencing where available.

Please confirm that each of the measures discussed above is being implemented and, if not, why not.  In addition, if there are other measures to address COVID-19 that the Department is considering and undertaking, besides those we have outlined here, please communicate them to us.  We look forward to working together to help alleviate this crisis.

Sincerely,

Jerrold Nadler
Chairman

Karen Bass
Chair, Subcommittee on Crime,
Terrorism, and Homeland Security

cc:	Jim Jordan, Ranking Member
	John Ratcliffe, Ranking Member
	Subcommittee on Crime, Terrorism,
	and Homeland Security