```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
                -v-                                               :     17 Cr. 248 (VSB)
                                                                  :
RICHARD D. HART,                                                  :     SEALED OPINION &
        a/k/a "Rick Hart,"                                        :     ORDER
                                                                  :
                                Defendant.                        :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __4/27/2020__

VERNON S. BRODERICK, United States District Judge:

Before me is the motion of Richard D. Hart ("Defendant" or "Hart") "pursuant to 18 U.S.C. § 3582 (c)(1)(A) to modify [his] term of imprisonment to time served and to impose a special condition that [he] serve a period of home confinement on supervised release" based upon changed circumstances related to the care of his son, health conditions that he has allegedly developed since his incarceration, and the COVID-19[1] pandemic. (Hart Mot. 1.)[2]  Because Hart has not exhausted his administrative remedies and he provides no legal authority for his release on bail pending my decision on his motion, Defendant's motion for compassionate release is denied without prejudice.

I. **Background and Procedural History**[3]

From 2009 to July 2015, Michael Mendlowitz and Richard Hart, as executives of

---

[1] "COVID-19" refers to the coronavirus disease 2019. *See generally Coronavirus Disease 2019 (COVID-19), Frequently Asked Questions*, Centers for Disease Control and Prevention (updated Apr. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/faq.html.

[2] "Hart Mot." refers to Defendant Richard Hart's Motion to Modify Sentence, submitted by e-mail on April 2, 2020.

[3] The facts contained in this section are taken from the allegations in the Sealed Indictment filed in this case on April 24, 2017 ("Indictment"). (Doc. 2.) These facts are merely provided for background, and I do not rely upon them in deciding Defendant's motion.

Commerce Payment Group LLC ("CPS")—a credit card processing company—defrauded CPS customers, including small merchants who accepted credit cards and debit cards at their businesses. (Indictment ¶ 2.) Mendlowitz was the president and chief executive officer ("CEO") of CPS, and a minority owner of a twenty percent share of the company. (*Id.* ¶ 12.) Hart held various executive titles at the company until the termination of his employment in February 2015. For most of his time at CPS, Hart supervised the majority of CPS's sales representatives, and "held himself out at times as an executive of CPS and its various corporate affiliates." (*Id.* ¶ 13.)

The Indictment alleges that Mendlowitz and Hart used CPS's marketing and sales staff to falsely represent to prospective customers that they could obtain bankcard-processing services at rates below those of CPS's competitors, with no hidden fees or extra charges, and with guarantees that the rates would never change. For his part, Hart "developed and wrote false and fraudulent scripts and training materials to be used by sales representatives and instructed sales representatives to make specific misrepresentations to potential merchant-customers about particular fees and other terms of service," and "prepared marketing materials." Hart also "participated in fraudulent sales calls, and distributed recordings of those calls to sales representatives, as instructional models on how to conduct sales calls with potential merchant-customers." (*Id.* ¶ 14.)

On April 24, 2017, the Government filed the Indictment, (Doc. 2), which spanned some twenty-nine pages and charged Mendlowitz and Hart with conspiracy to commit mail and wire fraud, mail fraud, and wire fraud. On January 10, 2019, Defendant Hart pled guilty to the charge of conspiracy to commit mail fraud and wire fraud from at least in or about December 2011 until approximately July 2015, contained in a superseding information. (*See* Doc. 86.) Defendant was

2

sentenced to a year and a day on July 17, 2019, (Doc. 248), and he self-surrendered on October 11, 2019 to the Metropolitan Detention Center (the "MDC") in Brooklyn, New York, (Hart Mot. ¶ 2). Hart's release date listed on the Federal Bureau of Prisons (the "BOP") inmate locator system is August 17, 2020. Federal Bureau of Prisons, *Find an inmate,* https://www.bop.gov/inmateloc/ (search for 79059-054) (last visited Apr. 18, 2020).

On March 30, 2020, Defendant's attorney "transmitted [] Hart's request to the warden of MDC via email." (Hart Mot. ¶ 15.) The Warden at MDC was expected to receive the email, (Govt. Opp. 5)[4]; defense counsel received an email from BOP stating "[y]our email has been forwarded to the appropriate department,'" (Def. 4/3 Ltr. 1)[5]; and BOP "currently intends to review [] [Hart's] motion as soon as possible" and hopes to do so "within 30 days," (Govt. Opp. 5). However, BOP has apparently not formulated a position with regard to Hart's request for compassionate release. (*Id.*)

Defendant's motion for compassionate release, pursuant to 18 U.S.C. § 3582 (c)(1)(A), was submitted by e-mail on April 2, 2020, and included two exhibits. By Order dated April 3, 2020, I (1) directed the Government to file its opposition by 5 p.m. Friday, April 3, 2020; (2) requested that the Government address the issue of exhaustion; (3) asked the parties to "contact the appropriate authorities at the MDC and/or the BOP concerning whether or not they intend to and/or have the capacity to respond within 30 days to Defendant's motion and/or whether they have formulated a position with regard to Defendant's motion"; and (4) asked the parties to inform me of the results of their discussion(s) with prison officials by 5 p.m. Friday, April 3,

---

[4] "Govt. Opp." refers to the Government's letter in opposition to Defendant's motion, filed on April 3, 2020. (Doc. 248.)

[5] "Def. 4/3 Ltr." refers to the Defendant's letter dated April 3, 2020, in response to my April 3, 2020 Order. (Doc. 249.)

3

2020. (Doc. 247.)[6] The Government filed its opposition and response to my Order on April 3, 2020, (Govt. Opp.), and Defendant filed his response to my Order on that same day, (Def. 4/3 Ltr.). Along with his letter, Defendant also submitted by e-mail, "for purposes of confidentiality," a photocopy of the box containing his asthma inhaler, a letter from his wife's employer, and the death certificate for Defendant's wife's brother-in-law. Defendant submitted a reply to the Government's opposition on April 10, 2020. (Reply, Doc. 250.)[7]

## II. Discussion

Defendant seeks compassionate release "pursuant to 18 U.S.C. § 3582 (c)(1)(A) to modify [his] term of imprisonment to time served and to impose a special condition that [he] serve a period of home confinement on supervised release." (Hart Mot. 1.) Defendant argues that he is entitled to be released because: (1) of the COVID-19 pandemic; (2) "he suffers from a number of serious medical problems, including high blood pressure and asthma," and as a result he "is in the high-risk category of individuals who face grave health consequences or death from exposure to COVID-19," (*id*. ¶¶ 5–14); and (3) of changed circumstances related to the care of his son, including loss of Defendant's wife's sister as a caregiver for Defendant's son, (*id*. ¶¶ 19–20). Defendant further argues in his reply that the language of the First Step Act ("FSA") does not create a mandatory administrative exhaustion requirement and is therefore subject to exceptions. (Reply 1–5.) In opposition, the Government argues that: (1) Defendant has not complied with the statutory exhaustion requirements; and (2) the motion does not establish compelling or extraordinary reasons warranting a reduction in Defendant's sentence and his

---

[6] I also directed Hart to file his initial motion papers on the docket, or to seek permission to file a redacted version of his motion. To date, Hart's moving papers have not been filed on the docket.

[7] "Reply" refers to Defendant's letter dated April 10, 2020, submitted in response to the Government's opposition letter. (Doc. 250.)

4

release. (Govt. Opp. 1–5.) I find that because Defendant has not exhausted his administrative remedies, his motion must be dismissed at this time. I also find that Defendant has not sufficiently established extraordinary and compelling reasons warranting a reduction in his sentence and his release. However, because Defendant claims to have asthma and high blood pressure which, if sufficiently substantiated, could place him at an increased risk of serious health should he contract COVID-19, *see Groups at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention (last reviewed Apr. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html, if he renews his motion, he and the Government are directed to answer the following questions in their submissions: (1) when was Defendant first diagnosed with asthma?; (2) when was he first diagnosed with high blood pressure?; (3) what is believed to be the cause of his high blood pressure, if any?; (4) what medication(s), if any, has he been prescribed to treat the asthma?; (5) what medication(s), if any, has he been prescribed to treat the high blood pressure?; (6) if he has been prescribed medications to treat the asthma and high blood pressure, when were those medications first prescribed?; (7) does the BOP agree Defendant suffers from asthma and/or high blood pressure?; (8) is the BOP providing prescription medication to Defendant for asthma, high blood pressure, or any other health condition?; and (9) does having high blood pressure alone place individuals in Defendant's age group at higher risk of serious illness or death from COVID-19?.

### A. *Applicable Law*

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, — F. Supp. 3d —, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). Section 3582(c)(1)(A)(i), the compassionate release

statute, provides one such exception. The compassionate release statute permits a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[8] 18 U.S.C. § 3582(c)(1)(A).

Until recently, a court could not order compassionate release unless the BOP requested such relief on a prisoner's behalf. *See* U.S.S.G. § 1B1.13; *see also Gotti*, 2020 WL 497987, at *1. However, in December 2018, Congress passed the First Step Act, which did away with BOP's unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely. *See id.* The statute is clear that a court may only grant compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Requiring inmates to exhaust their administrative remedies before seeking court

---

[8] The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13, although I note that the Sentencing Guidelines have not yet been revised to take into account the First Step Act. *United States v. Russo*, No. 16-CR-441 (LJL), 2020 WL 1862294, *2 (S.D.N.Y. Apr. 3, 2020). The relevant section provides that a court may reduce the term of imprisonment if (1) "extraordinary and compelling reasons warrant the reduction," *id*. § 1B1.13(1)(A); (2) "the Defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id*. § 1B1.13(2); and (3) "the reduction is consistent with this policy statement," *id*. § 1B1.13(3). The Application Notes describe the circumstances under which "extraordinary and compelling reasons exist." *Id*. § 1B1.13 Application Note 1. Further, Defendant, as proponent of the motion, bears the burden of proving that extraordinary and compelling reasons exist. *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")); *see also United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) ("[I]f the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (quoting *Butler*, 970 F.2d at 1026)); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the "opportunity to correct [their] own mistakes," *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, it promotes efficiency, since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

"The provenance of an administrative exhaustion requirement determines its scope." *United States v. Monzon*, No. 99cr157 (DLC), 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020). There are two types of exhaustion requirements: jurisdictional ones and non-jurisdictional ones. Jurisdictional exhaustion requirements "govern a court's adjudicatory authority" and are not subject to any exceptions. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks omitted). Non-jurisdictional requirements, also referred to as "claim-processing rules," can be "forfeited if the party asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). The Second Circuit has not yet squarely answered the question of whether the exhaustion requirement of § 3582(c) is jurisdictional.[9] *Monzon*, 2020 WL 550220, at *2.

---

[9] Other courts of appeal are split on the question of whether section 3582(c) as a whole is jurisdictional or non-jurisdictional. *Compare United States v. Graham*, 704 F.3d 1275, 1279 (10th Cir. 2013) (considering section 3582(c) a jurisdictional rule); *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012), *United States v. Williams*, 607 F.3d 1123, 1125–26 (6th Cir. 2010); *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010); *and United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993), *with United States v. May*, 855 F.3d 271, 274–75 (4th Cir. 2017) (considering section 3582(c) a claim-processing rule); *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1245 (11th Cir. 2017); *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015); *and United States v. Weatherspoon*, 696 F.3d 416, 421 (3d Cir. 2012). And while the Second Circuit has not weighed in on whether the exhaustion requirement of section 3582(c)(1)(A) is jurisdictional, it has, "in a related context . . . firmly disagreed with the characterization by certain other circuits that § 3582(c)(2) is jurisdictional." *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *2 (S.D.N.Y. Apr. 13, 2020) (citing *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013)).

### B. *Application*

#### 1. **Exhaustion**

Here, the Warden of MDC has not made a motion for compassionate release on Defendant's behalf.  Defendant acknowledges that he submitted his request to the Warden at MDC on March 30, 2020, and that "30 days has yet to pass," and requests that if I decide to "defer ruling on this application until after the BOP's determination (and any required administrative appeals), or after 30 days from BOP's receipt of Mr. Hart's request," that I "release [him] pending a ruling on this motion."  (Hart Mot. ¶ 15.)  In other words, Defendant concedes that he filed his motion before the time period required by the language of the statute had passed.  (*Id*. ("Although BOP has yet to rule on the request (and 30 days has yet to pass), in light of the time sensitive nature of this application we are filing this motion now so that the Court has an opportunity to review the matter as quickly as possible."))  I find his arguments in favor of circumventing that statutory language unavailing.

Regardless of whether section 3582(c) is a jurisdictional statute or a non-jurisdictional claim-processing statute, its exhaustion requirement is clearly statutory and therefore mandatory.  *See Monzon*, 2020 WL 550220, at *2 ("It is unnecessary to resolve here whether § 3582(c) creates a jurisdictional bar to the modification of Monzon's sentence or simply sets forth a statutory exhaustion requirement."); *United States v. Tyreek Ogarro*, No. 18-cr-373-9 (RJS) (Apr. 14, 2020), 2020 WL 1876300, *3 ("But regardless of whether the statute is jurisdictional or a claim-processing rule, its exhaustion requirements are clearly mandatory.").  I am not persuaded by Defendant's argument that section 3582(c) does not create a mandatory administrative exhaustion requirement.  The language of the statute is clear on its face that a court can only act if the BOP files a motion for compassionate release or "upon motion of the

8

defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This language does not leave room for court-made exceptions. *See United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) ("Given Congress's decision to mandate exhaustion and to specify a single alternative, the Court is not free to infer a general 'unwritten 'special circumstances' exception.'") (quoting *Ross*, 136 S. Ct. at 1857). I recognize that some of my colleagues have found otherwise. *See Russo*, 2020 WL 1862294, at *3–7; *Haney*, 2020 WL 1821988, at *3–4; *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2–3 (S.D.N.Y. Apr. 1, 2020). Although I see the logic of these decisions, and acknowledge that as a practical matter, in the present circumstances 30 days is a significant length of time for prisoners to have to wait before seeking judicial relief,[10] I conclude that I am bound by the Supreme Court's clear statement in *Ross* that "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion." 136 S. Ct. at 1857. Without more explicit guidance from Congress, the Supreme Court, or the Second Circuit, I am not prepared to read an exception into the statute. Accordingly, I join the "many other courts to have considered Section 3582(c)(1)(A)'s

---

[10] I agree with Judge Furman's comments in *Roberts* that in general the exhaustion requirement in section 3582(c) is appropriate since it permits the BOP, the entity generally in the best position, to assess a "'defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan,'" while at the same time permitting review by the courts after thirty days, thereby reflecting "congressional intent for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released." *Roberts*, 2020 WL 1700032, at *2 n.2 (quoting *Russo*, 2020 WL 1862294, at *1). However, as Judge Furman and other judges have recognized, during the current COVID-19 pandemic, "30 days is anything but 'exceptionally quick' — indeed, each day, perhaps each hour, that elapses 'threatens incarcerated defendants with greater peril.'" *Id.* (quoting *United States v. Gross*, No. 15-CR-769 (AJN), 2020 WL 1673244, at *2-3 (S.D.N.Y. Apr. 6, 2020) (quoting *Russo*, ECF No. 54, at 5)). Therefore, I urge—as many of my colleagues have done—the BOP to expedite its decisions on applications for compassionate release while COVID-19 presents an increased threat to certain members of its prison population.

9

exhaustion requirement and found it to be mandatory." *United States v. Demaria*, No. 17 Cr. 569 (ER), 2020 WL 1888910, at *4 (S.D.N.Y. Apr. 16, 2020) (collecting cases); *see also United States v. Ogarro*, No. 18-cr-373-9 (RJS), 2020 WL 1876300, at *2–5 (S.D.N.Y. Apr. 14, 2020); *United States v. Rabadi*, No. 13-CR-353 (KMK), 2020 WL 1862640, at *3 (S.D.N.Y. Apr. 14, 2020).

### 2. Extraordinary and Compelling Circumstances

In light of my decision that Defendant has not exhausted his administrative remedies, I need not reach the issue of whether he has demonstrated extraordinary and compelling circumstances. However, in order to provide guidance to the parties in anticipation of possible future litigation, I will address this issue. For the reasons that follow, on the current record I do not find that Defendant has met his burden of establishing that there exist extraordinary and compelling reasons to reduce his sentence and grant his release.

Asthma has been identified by the Centers for Disease Control as an illness that may place individuals at increased risk of serious illness or death from COVID-19. *See Groups at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention (last reviewed April 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.[11] However, despite asserting he "has a long history of suffering from asthma," and that "a physician recently diagnosed [him] with high blood pressure" the evidence Defendant has submitted to support these illnesses and their connection to his risk profile is insufficient. With regard to asthma, Defendant has not sufficiently demonstrated he has and is suffering from asthma. The only evidence he has submitted to date besides conclusory statements in his

---

[11] Other sources, however, suggest asthma may not be a major risk factor for severe illness as a result of contracting COVID-19. *See Asthma is Absent Among Top Covid-19 Risk Factors, Early Data Shows*, New York Times (Apr. 16, 2020), *available at* https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html.

10

submissions is a photograph attached to an April 3, 2020 email from counsel asserting that it depicted Hart's inhaler. In contrast, prior to his sentencing, Defendant told the Probation Department that "he has been in good health his entire life," (Hart Presentence Investigation Report at ¶ 101), and the terms asthma and high blood pressure do not appear anywhere in Defendant's Presentence Investigation Report. In his reply submission, Defendant's counsel seems to acknowledge that the evidence submitted to date may be insufficient by stating that "the defense is prepared to address the government's claim that Mr. Hart's medical condition[s] coupled with the COVID-19 pandemic do not establish compelling and extraordinary reasons for Mr. Hart's release if the Court." (Reply 5.)

With regard to Defendant's assertion that he has high blood pressure, the Government concedes that "Hart's own medical records do evidence some elevated blood pressure." (Govt. Opp. 4.) However, neither party has sufficiently demonstrated the extent of this condition or that high blood pressure would place Defendant Hart, who is 39 years old, at increased risk of serious illness or death if he were to contract COVID-19. The CDC website does list pulmonary hypertension as a risk factor for severe illness; however, Defendant has not alleged that he suffers from pulmonary hypertension. Recent news reports and data have indicated that hypertension is the most common comorbidity among patients who have died of COVID-19 in New York,[12] but when those patients are broken down by age, hypertension is only the top comorbidity for patients over the age of 40.[13] Patients in Defendant Hart's age bracket appear to

---

[12] *See Asthma is Absent Among Top Covid-19 Risk Factors, Early Data Shows*, (Apr. 16, 2020), *available at* https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html.

[13] According to the New York State Department of Health, hypertension is the top reported Covid-19 comorbidity in New York State. *See* New York Department of Health, Covid-19 Tracker, Fatalities, (Apr. 17, 2020), https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n. While 46 of the 190 individuals aged 30 to 39 who have died of COVID-19 in this state also had hypertension, those 190 individuals make up only 1.5 percent of New York's total fatalities, which number 12,192.

11

have an extremely low risk of dying even if they have hypertension.

Defendant also seeks compassionate release based upon changed family circumstances. Here, Defendant has failed to demonstrate that his family circumstances have materially changed. Defendant states that his wife was able to maintain employment because of "assistance . . .from her sister and brother-in-law," but that the brother-in-law recently passed away, "making it impossible for [Defendant's wife's] sister . . . to continue to be able to care for [Defendant's] son." (Hart Mot. 7.) The suggestion from Defendant's submission is that Defendant's sister-in-law and her husband had been providing and/or assisting with the childcare for Defendant's son. However, Defendant fails to demonstrate how the circumstances have changed since his sentencing or to substantiate through individuals with personal knowledge exactly the level of care and assistance that was being provided prior to the death of Defendant's wife's brother-in-law. Therefore, whether I consider these purported changed circumstances in isolation or in combination with the purported other compelling and extraordinary reasons argued by Defendant, I find that Defendant has failed to meet his burden of establishing that there exist extraordinary and compelling reasons to reduce his sentence and grant his release.

### III.  Conclusion

My decision in this case is based on the unique circumstances of Defendant Hart and the context in which his motion has been made. For the reasons stated above, because (1) I find that Defendant has not exhausted administrative remedies; and (2) I find that on the current record presented to me that Defendant has not sufficiently established extraordinary and compelling circumstances justifying the reduction in his sentence and his release from custody, Defendant's motion for compassionate release is DENIED.[14]

---

[14] In making this finding, I do not suggest that the BOP is required to make a similar finding in part because my

Although I deny Hart's motion, in part, due to his failure to exhaust his administrative remedies, because of the COVID-19 pandemic and its impact on the BOP's staff and inmate population, I urge the BOP accelerate its consideration of Defendant's request for compassionate release. I direct the parties to provide this decision to the appropriate authorities within BOP so that they can consider my request to accelerate their review of Defendant's request for compassionate release.

Defendant Hart is directed to file his initial motion papers on the docket, or to seek permission to file a redacted version of those papers. Because this Opinion & Order was decided based on materials related to Defendant's health or other information that should not be filed on the public docket, the Opinion & Order will be filed under seal. The parties are directed to meet and confer with regard to proposed redactions, and to propose redactions to me within the next thirty (30) days. I will then review the proposed redactions and if appropriate, implement them before filing the Opinion & Order on the public docket. If the parties do not submit proposed redactions within thirty (30) days, I will file the Opinion & Order in its current form on the public docket.

If Defendant Hart renews his motion upon fulfillment of the conditions set forth in section 3582, he and the government are directed to answer the following questions in their submissions: (1) when was Defendant first diagnosed with asthma?; (2) when was he first diagnosed with high blood pressure?; (3) what is believed to be the cause of his high blood

---

access to information about Defendant's current health and medical history is limited and I have no insight into any institutional considerations that might be relevant to BOP's consideration of Defendant's request for compassionate release. As noted above, "the BOP is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan." *Roberts*, 2020 WL 1700032, at *2 n.2 (internal quotation marks omitted). Indeed, that is the very principle that animates the exhaustion requirement. *See id.*

pressure, if any?; (4) what medication(s), if any, has he been prescribed to treat the asthma; (5) what medication(s), if any, has he been prescribed to treat the high blood pressure?; (6) if he has been prescribed medications to treat the asthma and high blood pressure, when were those medications first prescribed?; (7) does the BOP agree Defendant suffers from asthma and/or high blood pressure?; (8) is the BOP providing prescription medication to Defendant for asthma, high blood pressure, or any other health condition?; and (9) does having high blood pressure alone place individuals in Defendant Hart's age group at higher risk of serious illness or death from COVID-19?.

The Clerk of Court shall make this document viewable to Eric Mark Sears, Jacob Mitchell, David Raymond Lewis, David Matthew Abramowicz, Dina McLeod, and Jilan Janet Kamal.

SO ORDERED.

Dated:   April 23, 2020
         New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge