LAW OFFICE OF
# Jacob Barclay Mitchell, Esq.
140 Broadway, Suite 4611
New York, New York 10005

TELEPHONE: (212) 204-2574
CELLULAR: (540) 273-3400

E-MAIL: jacobbarclaymitchell@gmail.com
FACSIMILE: (212) 858-7750

June 24, 2020

Honorable Vernon S. Broderick
United State District Court
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY   10007

    Re:    <u>United States v. Richard Hart</u>
            17-cr-248 (VSB)

Dear Judge Broderick:

    The defense writes in response to the government's opposition, dated June 19, 2020, to defendant Richard D. Hart's second motion for compassionate release. The defense respectfully submits that the motion should be granted.

**A. Mr. Hart has established "Extraordinary and Compelling Reasons" to reduce his sentence.**

    a.  Caregiver Responsibilities

    Mr. Hart's brother-in-law was the caregiver to Mr. hart's minor child. His death, coupled with Ms. Hart being an essential employee during the time of COVID, fits the example set forth in U.S.S.G. § 1B1.13 app. note 1(C)(i), "The death or incapacitation of the caregiver of the defendant's minor child or minor children." Nothing in the language of the example under the application note suggests that extraordinary and compelling circumstances do not apply because, "Hart is not the only available caregiver for his minor child." (Gov't Response Dkt. No. 266, pg. 4) Indeed, such an interpretation would render the guideline meaningless. If the guideline were so limited, an extraordinary and compelling circumstance would only exist if every person and institution, other than the defendant, could not care for a minor child in need.

    b.  Medical Issues

    Mr. Hart has been treated for asthma since he was a child. On this basis, the MDC medical staff prescribed Mr. Hart medication for asthma after giving an assessment of

"unspecified abnormalities of breathing, R069 -Current -Subjective asthma". (Deft. Exh. G at 2)

The fact that Mr. Hart has made no complaints about his asthma overlooks the real issue, which is the recognized danger that having asthma, regardless of symptoms, puts him in higher risk of dying if he contracts COVID in the MDC.

Mr. Hart's medical records from the MDC on March 18, 2020 show that, after Mr. Hart was examined n response to a sick call for right shoulder pain, the medical staff independently diagnosed Mr. Hart with high blood pressure (hypertension). Not only was his visit and diagnosis before the MDC COVID lockdown was put in place but Mr. Hart was not the one to raise the issue of his hypertension.

High blood pressure, or hypertension, appears on the CDC webpage identifying factors that put people at heightened risk of severe illness from COVID. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (Last Visited June 24, 2020) In which it states: "Actions to take…. People with hypertension should continue to manage and control their blood pressure and take their medication as directed."

Releasing Mr. Hart would reduce his odds of contracting COVID. At home he would be able to follow CDC guidelines by maintaining social distancing and regularly washing his hands and using a fresh, clean mask daily. Mr. Hart could care for his son in a separate area of the house while his wife maintained a safe distance as recommended by the CDC. Conversely, in the MDC Mr. Hart shares a poorly ventilated cell with others and is released for only a few hours a day into a small area with dozens of other inmates. He wears the same mask for days at a time. Multiple staff members leave the facility every day, risking potential exposure to COVID and then come back to the facility and interact with Mr. Hart in close quarters. Mr. Hart must share a few phones and computers with dozens of inmates. The risk from all these different variables is much higher than sheltering at home in a separate area with his son while his wife maintains a safe distance.

B.  The Section 3553 (a) Factors Justify a Reduced Sentence

Granting Mr. Hart's motion would be consistent with the § 3553 (a) factors. For his role in the multimillion-dollar fraud he received a salary each year over the approximately 4 years of the conspiracy of $125,000 a year and was not the beneficiary in any other way of the fraud.

Having Mr. Hart serve the remaining 20 days of his sentence serves no purpose other than punishment by pandemic. Mr. Hart is locked in his cell for 21 hours a day not being able to socially distance or maintain proper hygiene. Such conditions are slowly eroding his mental health. Under these circumstances there are also no programs available for rehabilitation. To this extent the objectives of incarceration have been achieved.

For these reasons, Mr. Hart's motion for a modification of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) should be granted.

Respectfully submitted,

_____/S/_____
Jacob B. Mitchell
Eric Sears
Defense Counsel for Richard Hart
(540) 273-3400